IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| S.G., <br><br> Plaintiff, <br><br> v. <br><br> COASTAL HOSPITALITY ASSOCIATES, LLC., *et al.*, <br><br> Defendants. | Case No. 2:25-cv-274 |

**OPINION & ORDER**

Plaintiff S.G., a survivor of sex trafficking, sued Coastal Hospitality Associates, LLC and Dunes Hotel Investment Associates, LLC, as well as franchisor Marriott International, Inc., seeking damages after the plaintiff was trafficked at Spring Hill Suites by Marriott. The defendants moved to dismiss. ECF No. 41 (Marriott); ECF No. 43 (Coastal and Dunes). For the reasons stated herein, both motions will be **DENIED**.

I. **BACKGROUND**

At this stage, the Court assumes that the facts alleged in the Amended Complaint are true. The plaintiff is a minor and a survivor of sex trafficking who was trafficked in 2022 at the Spring Hill Suites by Marriott. ECF No. 40 ¶¶ 9–10. Coastal and Dunes "own, supervise, . . . and/or operate" Spring Hill Suites, and Marriott is its franchisor. *Id.* ¶¶ 20, 22; *see id.* ¶ 21.g.

The plaintiff's trafficker "compelled her obedience by maintaining total control over her day-to-day activities;" "forcing her to consume alcohol and drugs to ensure

she remained docile;" and "hitting, slapping, choking, beating, manipulating, humiliating, degrading, exhausting, [and] isolating [her,] forcing her into debt, [making] threats to her person and her family[,] and [using] other methods to enforce her compliance." ECF No. 40 ¶ 12. When the plaintiff interacted with hotel staff, she had bruising on her body and was "malnourished, drugged and clothed with inappropriate attire for a minor." *Id.* ¶ 89. The plaintiff also "sought help from the front desk twice" and "audibly plea[ded] to [] hotel staff for help." *Id.* ¶¶ 79, 89.n. Hotel staff "knew [the p]laintiff's trafficker," recorded the room the plaintiff's trafficker rented as "only one occupant despite the minor child" being present, "assisted [the p]laintiff's trafficker with his activities," "met with [the p]laintiff's trafficker and the [p]laintiff before they checked in," and "were each paid $200 by the [the p]laintiff's trafficker for their assistance." *Id.* ¶¶ 58–89. There was a "[c]ontinuous procession[] of unregistered buyers entering and exiting the room," and the plaintiff's trafficker "solicit[ed] [] buyers in and around" the hotel, including in the lobby and parking lot. *Id.* ¶ 89. The defendants had "video surveillance" of their hotels and had received "oral or written complaints" regarding sex trafficking. *Id.* ¶ 95.

Marriott controlled Spring Hill Suites's training, policies, and procedures, including on human trafficking and commercial sex trafficking, and dictated "risk management processes to identify, prevent, and mitigate risks for commercial sex trafficking." ECF No. 40 ¶¶ 21, 115, 121. It controlled "a uniform and required reservation and marketing system, [a] credit processing system[,] and training and

2

policy on brand standards" and made "employment decisions" including "hiring, firing, and promotions." *Id.* ¶ 121.

## II. LEGAL STANDARDS

### A. Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a [Fed. R. Civ. P. 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. When considering a motion to dismiss, the court "must take all the factual allegations in the complaint as true," but the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B. Civil Liability Under the Trafficking Victims Protection Reauthorization Act (TVPRA)

Title 18, United States Code, Section 1595 sets forth the standard for civil liability under the TVPRA and provides the basis for the plaintiff's claims. That section provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, . . . financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district

> court of the United States and may recover damages and reasonable attorney[] fees.

18 U.S.C. § 1595(a). Therefore, to state a claim for beneficiary liability under the TVPRA, a complaint must plausibly allege that the defendant "(1) knowingly benefited (2) from participating in a venture[,] (3) that venture violated the TVPRA as to the [plaintiff][,] and (4) the [defendant] knew or should have known that the venture violated the TVPRA as to the [plaintiff]." *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 723 (11th Cir. 2021); *see* 18 U.S.C. § 1595(a).

Violations of the TVPRA are defined in 18 U.S.C. § 1591, which provides criminal penalties for:

> (a) Whoever knowingly—
>
>> (1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>>
>> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

## III. ANALYSIS

### A. Beneficiary Liability[1]

#### *i. Knowing Benefit*

To satisfy the knowing benefit element of a civil TVPRA claim, a complaint may allege facts to show that a defendant benefitted "financially or by receiving anything of value." 18 U.S.C. § 1595(a). Renting rooms to a trafficker constitutes a "financial benefit from a relationship with the trafficker" sufficient to satisfy the knowing benefit element. *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 965 (S.D. Ohio 2019); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-656, 2020 WL 4368214, *4 (N.D. Cal. July 30, 2020). The plaintiffs contend that both Coastal and Dunes "benefited financially from renting the rooms where Plaintiff was trafficked for sex," ECF No. 40 ¶¶ 20.g, 22.f, and that Marriott "benefit[ed] financially by receiving a percentage of the gross room revenue from the money generated by the operations of its hotels, including through a percentage of the revenue generated . . . from the rates charged on the rooms in which [the p]laintiff was trafficked," *id.* ¶ 21k. Therefore, the Amended Complaint sufficiently pleads that because the defendants obtained money from the plaintiff's trafficker, they received a "financial benefit from a relationship with the trafficker[s]." *M.A.*, 425 F. Supp. 3d at 965.

---

[1] The Court adopts the reasoning of the persuasive out-of-circuit cases it relied on in *Doe v. Wyndham Hotels & Resorts, Inc.*, 2:24-cv-204, 2025 WL 725268 (E.D. Va. Mar. 6, 2025).

5

### *ii.* *Participation in a Venture*

"Participation in a venture" requires "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4). "In order to plead [the defendants] participated in [the alleged] venture, [the plaintiff] must allege facts from which the Court could reasonably infer the hotels could be said to have a tacit agreement with the trafficker." *A.D. v. Choice Hotels Int'l, Inc.*, No. 2:22-cv-648, 2023 WL 5510267, at *4 (M.D. Fla. Aug. 25, 2023) (quotation marks and citation omitted). "To survive a motion to dismiss, all that is necessary is for a plaintiff to allege [] a continuous business relationship, which gives rise to an inference, drawn in the plaintiff's favor, that the [] defendant facilitated the venture's success." *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 560 (7th Cir. 2023).

Marriott asserts that the plaintiff must allege the performance of an overt act to sufficiently plead the 'participation in a venture' element of her claim. ECF No. 42 at 17. District courts disagree about whether that is true, and no binding precedent exists to answer the question. *Compare, e.g., A.D. v. Wyndham Hotels & Resorts, Inc.*, 4:19-cv-120, 2020 WL 8674205, at *3 (E.D. Va. July 22, 2020) (requiring an overt act) *with A.B. v. Hilton Worldwide Holdings, Inc.*, 484 F. Supp. 3d 921, 937 (D. Or. 2020) (finding that an overt act is not required). At this juncture, the Court need not decide which approach is correct, because the plaintiff pleads a number of overt acts in furtherance of the alleged venture. *See* ECF No. 40 ¶¶ 61 (erroneously recording the room in which the plaintiff was trafficked as having a single occupant), 63 (employees met with the trafficker before he checked in); *see also id.* ¶¶ 62 (two specific employees

6

"assisted the [p]laintiff's trafficker with his activities and facilitied his stay and conduct"), 64 (employees were "paid $200 . . . for their assistance," giving rise to the inference that their acts in fact helped the trafficker). Therefore, the Amended Complaint adequately alleges participation in the venture.

The plaintiff also maintains that Marriott failed to implement trafficking prevention training programs, *id.* ¶ 127; collected room reservation, payment, occupancy, and browsing data, *id.* ¶¶ 117, 121; and had expansive control over franchisee policies and operations, *id.* ¶ 121. Thus, the purported ongoing business relationship between the defendants and the plaintiff's trafficker gives rise to the inference that the defendants "facilitated the venture's success." *G.G.*, 76 F.4th at 560; *see A.M. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 787, 798 (S.D. Ohio 2024) (allegations that franchisor "profited, failed to implement policies, and maintained expansive control over the hotel operation standards meet" participation in a venture definition). The Amended Complaint adequately pleads that all defendants participated in the venture.

### iii. Predicate Act

A complaint must "plead sufficient facts to plausibly allege that the venture in which the [defendant] franchisors participated committed [a crime enumerated in the TVPRA] against [the plaintiff]." *Doe #1*, 21 F.4th at 725. The plaintiff's § 1595 beneficiary liability claim is premised upon the predicate act of a violation of §

1591(a).[2] Section 1591(a) makes it a crime to knowingly harbor or solicit a person, "knowing . . . that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a).

The Amended Complaint asserts that the plaintiff "was trafficked for commercial sex" at the defendants' hotel and that her trafficker "compelled her obedience by maintaining total control over her day-to-day activities;" "forcing her to consume alcohol and drugs to ensure she remained docile;" and "hitting, slapping, choking, beating, manipulating, humiliating, degrading, exhausting, [and] isolating [her], forcing her into debt, [and making] threats to her person [and] her family." ECF No. 40 ¶ 12. These facts are sufficient to allege a predicate act of sex trafficking.

### iv. Knowledge

"A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it knew or should have known that the venture was engaged in sex trafficking." *M.A.*, 425 F. Supp. 3d at 965 (quotation marks omitted). Thus, knowledge can be either actual or constructive. The plaintiff's allegations as to knowledge satisfy the statute as to all three defendants.

---

[2] Section 1591(a) applies to conduct "in or affecting interstate . . . commerce." 18 U.S.C. § 1591(a). There is no dispute that the interstate commerce requirement is satisfied, and the Court independently finds that the Amended Complaint pleads sufficient facts to satisfy the requirement. *See* ECF No. 40 ¶ 71 (alleging that the plaintiff's trafficker "used . . . Wi-Fi to post advertisements"); *id.* ¶ 89.a (the plaintiff's trafficker "pa[id] for room with a credit card"). On this basis, the Court can reasonably infer that the advertisements posted and the payments the plaintiff's traffickers made were "in or affecting interstate commerce." 18 U.S.C. § 1591(a)(1).

### a.  *Franchisees' Knowledge*

The Amended Complaint includes facts to show that Coastal and Dunes had actual knowledge of the plaintiff's sex trafficking at Spring Hill Suites by alleging that hotel staff "knew [the p]laintiff's trafficker," recorded the room the plaintiff's trafficker rented as "only one occupant despite the minor child" being present, "assisted [the p]laintiff's trafficker with his activities," "met with [the p]laintiff's trafficker and the [p]laintiff before they checked in," and "were each paid $200 by the [the p]laintiff's trafficker for their assistance." ECF No. 40 ¶¶ 58–89. These facts support the inference that hotel staff—and thus the defendant franchisees—had actual knowledge that the room rented to the plaintiff's trafficker was purchased for the purpose of sex trafficking in violation of the TVPRA as to the plaintiff.

But even if the Court could not infer that the Coastal and Dunes had actual knowledge of the plaintiffs' trafficking, these facts are sufficient to plausibly allege that the defendant franchisees had constructive knowledge that they were participating in a sex trafficking venture. Courts generally adopt a negligence standard for determining whether a defendant had constructive knowledge of sex trafficking. *See, e.g.*, *A.D.*, 2020 WL 9550005, at *5; *Doe (L.M.) v. 42 Hotel Raleigh, LLC*, 717 F. Supp. 3d 464, 470 (E.D.N.C. 2024); *T.P. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-cv-4933, 2022 WL 17363234, at *7–9 (S.D. Ohio Dec. 1, 2022); *S.J. v. Choice Hotels Int'l, Inc.*, 473 F. Supp. 3d 147, 153–54 (E.D.N.Y. 2020). To impute constructive knowledge to a defendant, a court must find that the defendant "should have known" about the alleged sex trafficking, not that the defendant "might have

9

been able to guess about sex trafficking." *Doe (L.M.)*, 717 F. Supp. 3d at 470; *see also E.S. v. Best Western Int'l, Inc.*, 510 F. Supp. 3d 420, 428 (N.D. Tex. Jan. 4, 2021).

Generally, courts have found allegations that the plaintiff "exhibited some external indicator of physical distress that would have been obvious to hotel staff had they not been negligent" to be sufficient to establish constructive knowledge. *A.B. v. Extended Stay*, No. 3:22-cv-5939, 2023 WL 5951390, at *6 (citing *A.W. v. Red Roof Inns, Inc.*, No. 2:21-cv-4934, 2022 WL 17741050, at *7 (S.D. Ohio Dec. 16, 2022)) (finding TVPRA claim adequately pleaded where the plaintiff alleged "signs of physical abuse and weight loss"); *T.P.*, 2022 WL 17363234, at *8 (finding TVPRA claim adequately pleaded where the plaintiff exhibited "signs of physical abuse" and "her trafficker openly beat her in the parking lot of the hotel").

The Amended Complaint alleges that the plaintiff's "physical appearance include[d] being malnourished, drugged[,] and clothed with inappropriate attire for a minor" and that she had "bruising" on her body. ECF No. 40 ¶¶ 89.g, 79. Further, the Amended Complaint indicates that the plaintiff "sought help from the front desk twice" and "audibl[y] plea[ded] to [] hotel staff for help." *Id.* ¶¶ 79, 89.n. These facts lead to a reasonable inference that hotel staff observed clear "external indicator[s] of physical distress that would have been obvious to [them] had they not been negligent." *A.B. v. Extended Stay*, 2023 WL 5951390, at *6. Therefore, the Amended Complaint contains sufficient facts to support an inference that hotel staff had constructive knowledge that the room rented to the plaintiff's trafficker was

10

purchased for the purpose of sex trafficking in violation of the TVPRA as to the plaintiff.

### b. Knowledge Imputed to Franchisor

For Marriott to be liable under § 1595, knowledge or constructive knowledge of the plaintiff's sex trafficking must be imputed to it from the franchisee's employees. A plaintiff may bring a § 1595 claim under a theory of indirect or vicarious liability. *A.D*, 2020 WL 9550005, at *3. "[T]he TVPRA is silent on the issue of indirect liability, which suggests that the federal common law of agency should apply." *Id.* (quoting *J.C. v. Choice Hotels Int'l*, No. 3:20-cv-155, 2020 WL 3035794, at *1 (N.D. Cal. Jun. 5, 2020)); *see also, e.g.*, *A.B.*, 484 F. Supp. 3d at 939; *Doe (L.M.)*, 2024 WL 4204906, at *8. Therefore, the Court will apply the principles of federal common law. *See Krakauer v. Dish Network, LLC*, 925 F.3d 643, 659 (4th Cir. 2019) ("[W]e may . . . assume that federal statutes are written with familiar common law agency principles in mind.").

Under the Restatement of Agency, which federal courts look to in determining whether agency liability exists, "an agency relationship exists when a principal 'manifests assent' to an agent 'that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.'" *Krakauer*, 925 F.3d at 659–60 (quoting Restatement (Third) of Agency § 1.01). Once an agency relationship is formed, "traditional vicarious liability rules ordinarily make principals vicariously liable for acts of their agents in the scope of their authority." *Id.* at 660.

11

A complaint may plead an agency relationship between a franchisor and franchisee by alleging that the franchisor "had a high degree of control over the daily operations of [the franchisee hotel]." *A.D. v. Wyndham*, 2020 WL 9550005, at *4. Factual allegations that show a franchisor's control of a franchisee's reservation systems, brand loyalty programs, websites, employment policies and procedures, and brand quality standards are sufficient to establish a plausible agency relationship. *See, e.g., T.P.*, 2022 WL 17363234, at *12; *A.B. v. Hilton*, 484 F. Supp. 3d at 940.

The Amended Complaint avers that Marriott "exercises day-to-day control over Spring Hill Suites," "controls the training and policies," "controls a uniform and required reservation and marketing system, credit processing system and training and policy on brand standards," and made "employment decisions" including "hiring, firing, and promotions." ECF No. 40 ¶ 121. These allegations are sufficient to plead an agency relationship between Marriott and the franchisees—that is, a relationship that is more than brand or standard maintenance. Therefore, knowledge can be imputed to Marriott through vicarious liability.

### B. Negligence[3]

#### i. *Franchisees*

"The general rule in Virginia is that there is no common law duty for an owner or occupier of land either to warn or to protect an invitee on his property from the

---

[3] The Court exercises supplemental jurisdiction over the plaintiff's state law negligence claim because the claim is "part of the same case or controversy" as the plaintiff's TVPRA claim. *Rosmer v. Pfizer Inc.*, 263 F.3d 110, 114 (4th Cir. 2001) (quoting 28 U.S.C. § 1367(a)). In other words, the claims are premised on the same set of facts.

12

criminal act of a third party." *Taboada v. Daly Seven, Inc.*, 626 S.E.2d 428, 432 (Va. 2006), *on reh'g*, 641 S.E.2d 68 (Va. 2007). However, "narrow exceptions to this rule" exist where there is a "special relationship" between the owner and the invitee or guest. *Id.* at 432–33. The Virginia Supreme Court has held that a "special relationship" exists between innkeeper and guest that imposes "a duty of utmost care and diligence to protect the guest against reasonably foreseeable injury from the criminal conduct of a third party."[4] *Id.* at 327.

The Amended Complaint adequately pleads negligence under Virginia law. It asserts that sex trafficking was a reasonably foreseeable occurrence at the defendants' hotel from "their knowledge and/or past experiences that persons on the premises . . . would suffer serious bodily harm as a result of being victimized by violent crimes perpetrated by third parties on the premises" and that they should have known "for more than a decade that sex trafficking runs rampant at their [] hotels." ECF No. 40 ¶¶ 6, 145. The Amended Complaint also claims that there is a long history of trafficking at hotels and a specific code of conduct, ECPAT, to which (some of) the defendants are signatories but "only pay lip service to its goals[] while failing to implement its most effective guidance," *id.* ¶¶ 26–56, and that the defendants had knowledge of trafficking occurring "via video surveillance of their

---

[4] The injury from criminal conduct need not be reasonably foreseeable to the specific plaintiff but need only be reasonably foreseeable to the innkeeper's guests. *See Taboada*, 626 S.E.2d at 435 (Va. 2006); *cf. Commonwealth v. Peterson*, 749 S.E.2d 307, 359 (Va. 2013) (finding it was not reasonably foreseeable to a school that students broadly would fall victim to criminal harm).

13

hotels and oral or written complaints regarding the same," *id.* ¶ 95. Therefore, the Amended Complaint plausibly alleges that the defendants could reasonably foresee the plaintiff's trafficking at Spring Hill Suites.

### ii. *Franchisor*

For a franchisor to be vicariously liable for the negligence of a franchisee, the franchisor "must exercise[] some control over the daily operations of the franchisee's business," and must have "controlled the selection of the product which caused the injury or mandated a means or method which caused the injury." *Plunkett v. Crossroads of Lynchburg, Inc.*, No. 6:14-cv-28, 2015 WL 82935, at *3 (W.D. Va. Jan. 7, 2015). Here, the Amended Complaint alleges that Marriott controls the "procedures" and "policies on human trafficking, cybersecurity, amenities, food and beverage, cleanliness, and/or other hotel brand related policies" and "[d]evelop[s] . . . policies relating to security and guest safety . . . and the prevention of commercial sex trafficking at the branded hotels, including risk management processes to identify, prevent, and mitigate risks for commercial sex trafficking. ECF No. 40 ¶¶ 21, 115, 121. The plaintiff alleges that Marriott's failure to inform, train, and mandate processes to identify and prevent human trafficking despite being aware that human trafficking occurred at their hotels caused the plaintiff's injury in part because the plaintiff's trafficker "relied on Marriott's ineffectiveness and/or unenforced anti-trafficking measures when choosing where to traffic" and in part because the policies failed to prevent the plaintiff's trafficking. *Id.* ¶¶ 123–32. Therefore, the Amended Complaint sufficiently pleads that Marriott mandated a

14

means or method which caused the injury here—the training policies regarding sex and human trafficking that governed the franchisees.

### C. Shotgun Pleading

A "shotgun pleading" does not comply with Fed. R. Civ. P. 8(a)(2), because it "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading" or makes it "virtually impossible to know which allegations of fact are intended to support which claims for relief." *SunTrust Mortg., Inc. v. First Residential Mortg. Services Corp.*, No. 3:12-cv-162, 2012 WL 7062086, at *7 (E.D. Va. Sept. 11, 2012), *report and recommendation adopted*, No. 3:12-cv-162, 2013 WL 505828 (E.D. Va. Feb. 8, 2013) (cleaned up). In other words, a shotgun pleading "fails to give each [d]efendant notice as to the extent and scope of its liability." *Marriott Intl., Inc. v. Dynasty Mktg. Group LLC*, No. 1:21-cv-610, 2022 WL 20699258, at *4 n.12 (E.D. Va. Sept. 21, 2022).

Here, Marriott argues that the plaintiff's allegations regarding her sex trafficking at Spring Hill Suites "lump[] together" all defendants and "deprives Marriott of sufficient notice of what it is alleged to have done." ECF No. 42 at 12. But the mere fact that the factual underpinnings of the claims against each defendant are the same does not necessarily equate to a failure to provide fair notice. *See J.L.*, 521 F. Supp. 3d at 1075; *K.O. v. G6 Hospitality, LLC*, 728 F. Supp. 3d 624, 641 (E.D. Mich. Mar. 31, 2024). The Amended Complaint adequately alleges facts that detail the trafficker's routine conduct and the routine actions of hotel staff throughout the trafficking period as well as Marriott's oversight and control over Coastal and Dunes

15

such that it provides each of the defendants "fair notice of the claims and the grounds that [the] plaintiff's claims against [them] rest on." *J.L.*, 521 F. Supp. 3d at 1075. Accordingly, the Court declines to dismiss the Amended Complaint on the grounds that it constitutes an impermissible "shotgun" pleading.

## IV.   CONCLUSION

The motions to dismiss filed by Defendants Marriott International, Inc. (ECF No. 41) and Defendants Coastal Hospitality Associates, LLC and Dunes Hotel Investment Associates, LLC (ECF No. 43) are **DENIED.**

The defendants are **DIRECTED** to file answers to the Amended Complaint consistent with Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

/s/ Jamar K. Walker
United States District Judge

Norfolk, Virginia
November 20, 2025